## Bishop and another *against* Perkins.

Where the plaintiff, in an action of *assumpsit* for labour performed and materials furnished in building a house for the defendant, offered evidence to prove the value of such labour and materials ; the defendant claimed, that the labour was performed and the materials furnished under a special contract ; and it appeared, that a bill of particulars exhibited by the plaintiff referred to such contract ; but the plaintiff resisted the claim thus set up by the defendant, and this was a matter in dispute between the parties throughout the trial ; it was held, 1. that if the plaintiff succeeded in establishing his claim, a bill of particulars was not necessary, and would not limit his proof ; 2. that the evidence offered was admissible, as furnishing the rule of damages.

On an application for a new trial for a verdict against evidence, the question is not, whether the court, from a detail on paper of all the evidence, would have found as the jury did ; but whether there was such evidence as would justify the jury in giving the verdict in question.

The purpose for which a receipt was given, may be shown, by extrinsic evidence ; and that purpose being ascertained, it cannot be used for a different purpose.

This was an action of *assumpsit*. The declaration contained three counts. The first was for work and labour performed by the plaintiffs, in building a certain dwelling-house, out-house and fixtures, for the defendant, at his request ; and also for divers materials furnished in the doing and completing of said work, at his request. The second count alleged,

that in consideration that the plaintiffs, at the special instance and request of the defendant, had built a certain dwelling-house, and out-building and fixtures, for him, and furnished materials therefor, he undertook and faithfully promised to pay them so much money as they therefor reasonably deserved to have. The third count alleged, that the defendant promised to pay the plaintiffs for the building of such dwelling-house, out-house and fixtures, and furnishing materials therefor, so much money as the same were reasonably worth.

New-London,
July, 1848.

Bishop
v.
Perkins.

The cause was tried, on the general issue, at *Norwich*, *March* term 1848, before *Church*, Ch. J.

At the commencement of the trial, the plaintiffs exhibited to the court and jury the following bill of particulars:

" *George L. Perkins,* To *Bishop & Watrous*, Dr.

1846. To work, labour and materials furnished, in building, constructing and completing a house for you, in compliance with a contract for the same,     $2.800.00

To paid discount on your draft on *J. W. Perkins,*    10.50

To extra labour and work, and materials furnished, in building and constructing your house, not specified in or required by the terms of the contract, at your request, as follows, *viz.* To stone tables for stove-pipe.     .     .     .     1.25

To marble slides, $17.79. Oven-mouth and ash-pans,     .     .     .     $6.44—24.23

To raising and constructing building $2\frac{1}{2}$ feet in height over and above the specifications of the contract,     350.00

To altering bay windows from first plan of house,     60.00

To enlarging chimneys and building, different from the plan,     .     .     150.00

To enlarging size of the house upon the ground plan, over and above specifications of the contract,     225.00

To altering closets, pantries, making additional ones, taking down and altering bathing-room,     75.00

To raising height of roof from 16 to 20 feet above specifications of the plan, making additional shingling, roofing, and additional lathing and plastering for the same,     100.00

To extra work on front stairs of house, putting up niches, making extra framing and plastering, and also making mahogany rail,     25.00

To setting chimney pieces, grates and plaster for cornice in hall, . . . . 30.00

To altering and making green-house and plant-house, . . . . . 200.00

To making shelves and meal tubs in one of the closets, . . . . . 10.00

The plaintiffs then exhibited in evidence the contract referred to in their bill of particulars, which was as follows : " The contract hereby entered into, by and between *George L. Perkins* of *Norwich*, on the one part, and *Bishop & Watrous*, on the other part, witnesses, That the said *Bishop & Watrous*, on their part, engage to erect a building and out-building, for the said *George L. Perkins*, in conformity to the specifications hereunto annexed, and fully to complete the same, including the carpenter's work, and the mason's work, and painting, with their appurtenances, as per plans and specifications, for and in consideration of the sum of twenty-eight hundred dollars. And the said *George L. Perkins*, on his part, engages to pay the said *Bishop & Watrous* the sum of twenty-eight hundred dollars, for the work, done in accordance with the said plans and specifications, in the following manner : when raised and roof boarded, $600 ; when finished out-side, $500 ; when ready for plastering, and floors laid, $500 ; when ready for painting, $500 ; the balance when completed, $700.

*Norwich, March* 31st 1845.   *George L. Perkins.*
       *Bishop & Watrous.*"

The plaintiffs then introduced the specifications referred to in the contract, and the testimony of the following witnesses, viz. *Nathaniel Sherman, William Taylor, John S. Frost, Enoch Mosier, Milo Woodward, Leonard Maples, Jedediah Spaulding, Thomas Parks, Thomas Hull, Charles Corning, John Stanton, Owen Smith, John Field, William C. Potter, James Spaulding, E. Van Burdick, Isaac Avery, Albert Lyon, Dudley A. Summers,* and *Russell Warren,* in a deposition.

There was also offered and admitted in evidence, without objection, a certain *plan* of the building, showing its dimensions, style, divisions, &c. which plan, the defendant claimed, was made by an architect, mutually agreed upon by both parties, viz. *Russell Warren,* and was present when said contract was signed by the parties, and was the same plan referred to in, and intended by, said contract. And the defen-

dant claimed, that the plaintiffs were bound to construct the dwelling-house according to the contract and plan, and nothing was to be considered as extra work, which was embraced therein. In support of his claim, the defendant introduced the testimony of *Nahum R. Hapgood, David L. Gale, George Hibbard, Caleb B. Rogers, A. P. Willougby, Rufus Derby, A. C. Carrier, Charles Tracy, J. H. Vancott, Horace Dailey, Appleton Meech, George Meech, Charles Lee*, and *Wheaton Cottrell*.

The following documents were also proved, and admitted in evidence. 1. A receipt of *Bishop & Watrous*, for $600, dated *August* 2nd, 1845. 2. A receipt of *Bishop & Watrous* for $1132.48, dated *January* 5th, 1846; of which the following is a copy : " Received, *Norwich, January* 15th, 1846, of *George L. Perkins*, his draft on *J. W. Perkins* of *New-York*, dated *January* 15th, 1846, payable sixty days from date, for one thousand dollars ; which, if paid at maturity, (this sum being, with six hundred dollars heretofore received, in full for the first, second and third payments on the written contract,) is in full for all the work performed and materials furnished by us, in and about the dwelling-house and out-building by us to be built for said *Perkins*, excepting the payments hereafter to be made, as stipulated in said contract. Also, received of said *Perkins* one hundred and thirty-two dollars, forty-eight cents, on account of the subsequent payments due on this contract. *Bishop & Watrous*." 3. Six orders of *Bishop & Watrous* on *G. L. Perkins*, amounting in all to $219.36. 4. Letter of *G. L. Perkins* to *Bishop & Watrous*, dated *June* 3rd, 1846. 5. *Bishop & Watrous'* letter to *G. L. Perkins*, dated *December* 17th, 1845. 6. *G. L. Perkins'* letter to *Bishop* & *Watrous*, dated *June* 10th, 1846. 7. Contract between *Bishop & Watrous* and *Spauld-ing & Albertson* for painting of house. 8. *J. S. Hun____ & Co.'s* bill of glass against *G. L. Perkins*, receipted, amounting to $75.31. 9. *H. & F. Stimpson's* bill of furnace against *G. L. Perkins*, receipted, amounting to $38.

The plaintiffs denied, that said plan was a part of the contract, or was referred to, by the contract ; and if it was, that it had been, since the signing of the contract, materially altered, without their consent or knowledge.

On this subject, the court charged the jury as follows ; " It

HARVARD LAW SCHOOL LIBRARY.

Bishop
*v.*
Perkins.

is important to ascertain what was the actual written contract entered into, by these parties ; for all verbal or parol conversations, propositions or agreements, made, and all letters, written or received, before the execution of such written contract, must be laid out of the case. But the specifications referred to in said contract, are to be considered a part of it, and also the plan therein referred to, as it then existed, and without any subsequent unauthorized alterations, so far as the plan is definite and certain. The written contract, specifications and plan actually referred to, are to be taken together, as an entire contract, and so to be understood and construed, by the aid of the facts proved in the case, as to avoid contradictions, if possible, and so that every part shall have reasonable effect. If there is a palpable discrepancy between the specifications in the written contract and the plan referred to, obvious upon the face of them, parol evidence cannot help out the difficulty. But even in this case, the conduct of the parties, as shown by the proof, may be taken into consideration, by the jury, as giving a partial construction to the whole."

The plaintiffs, in their statement and claim to the jury, during the progress of the trial, claimed, that the original written contract had been mutually abandoned, by the parties ; and that the work upon the building had been, from the beginning, carried on, without reference to the stipulations in such written contract; and they offered evidence to prove what was the actual value of the whole work and materials, done and furnished by them, for the defendant, in the erection of the building. To this evidence the defendant objected, on the ground that the contract alone furnished the rule of damages, except so far as there might have been extra work performed by the plaintiffs, with the assent of the defendant. The evidence was admitted, *pro hac vice ;* the court remarking, that if from the whole evidence in the cause the jury should believe, that the special contract had been abandoned, as the plaintiffs claimed, the evidence offered would be proper for their consideration ; but as this was a point yet in controversy, the evidence would be admitted, subject to the final instructions to be given to the jury on this subject : and it was so admitted.

The plaintiffs also claimed, that if the special contract had not

been abandoned, still in the erection of the building, they had <span>New-London,</span> performed, at the defendant's request, a large amount of ex-<span>July, 1848.</span> tra work, not embraced in the special contract ; and having produced a bill of particulars of such work, as before stated, they introduced much evidence in support of their claim, all of which the defendant denied, except so far as it was provided for by the parties, in the specifications aforesaid.

New-London,<br>July, 1848.<br>Bishop<br>v.<br>Perkins.

In regard to the receipt signed by the plaintiffs, dated *January* 15th, 1846, the defendant claimed, that it appeared from this document, as well as from other testimony, that the special contract had not been abandoned by the parties ; and that nothing was due to the plaintiffs, for extra work. On the other hand, the plaintiffs claimed, that said receipt was only evidence conducing to show the amount of money due on the special contract, and did not, and was not by the parties intended to, affect the plaintiffs' claim for a reasonable compensation for extra work. And this receipt, with the other evidence in the cause, upon the respective claims of the parties, was submitted to the jury.

The court instructed the jury, that if, upon the evidence in the cause, they believed, that the special contract had not been abandoned, it was to be the governing rule in ascertaining how much the plaintiffs were entitled to demand and receive ; that if the contract was a hard one, yet the parties were bound by its stipulations, so far as they had not been mutually changed, modified or abandoned, by their assent. But the parties were at liberty, after the execution of the special contract, to alter or add to it, by parol ; and so far as it was thus altered, and so far as extra work had been by the plaintiffs performed, with the defendant's assent, or extra materials had been found, the defendant was bound to allow a reasonable compensation therefor. But in considering the amount of extra work and materials, the plaintiff could not go beyond the specifications in his bill of particulars ; and the jury must be confined to these, in considering the plaintiffs' claim. But if the special contract had been entirely and mutually abandoned, by the parties, the plaintiffs had right to charge a reasonable compensation, for the whole labour and materials ; and in such case, the evidence introduced by the plaintiffs, of the value of the whole work and

materials, should be considered by the jury: otherwise, it should be laid out of the case.

The court also charged, as the defendant claimed, that if the building had not been finished in a reasonable time, by reason of the plaintiffs' neglect, and without the fault or directions of the defendant, the defendant should be allowed, and have deducted from the plaintiffs' claim, a just and reasonable sum, for the delay and injury by this means sustained by him. And further, that whatever moneys the defendant had been reasonably compelled to advance, to make up and complete any deficiency in the fulfillment of the contract on the part of the plaintiffs, should be allowed and deducted from their demand.

The jury returned a verdict for the plaintiffs, for the sum of 1770 dollars, 10 cents, damages; and the defendant thereupon moved for a new trial, on the ground that the verdict was palpably against the evidence in the cause, and that the damages were excessive.

*Strong* and *E. Perkins*, in support of the motion, contended, 1. That the testimony as to the value of the house, was not admissible. In the first place, the declaration of the plaintiffs was, by their bill of particulars, limited and confined to the claims specified in the bill. The object of a bill of particulars, is, to give the defendant more precise information, as to the nature and extent of the demand, than is furnished by the declaration. *Landon* v. *Sage*, 11 *Conn. R.* 302. 306. The plaintiffs are as much bound by it, as to their proofs and right of recovery, as by the declaration. *Starkweather* v. *Kittle*, 17 *Wend.* 20. *Dubois* v. *Delaware & Hudson Canal Co.* 12 *Wend.* 334. In this case, the plaintiffs, by their bill, gave the defendant notice, that they claimed the special contract between them for the building of the house, to be a valid and subsisting contract, and that their right to recover rested upon their performance of it. They were thereby estopped from claiming, that the contract had been abandoned, as well as from claiming any other rule of damages than that furnished by the contract. Secondly, this testimony was calculated to prejudice the minds of the jury in favour of the plaintiffs; and there can be no better evidence that it had this effect, than the amount of the verdict.

*New-London,*
July, 1848.

Bishop
*v.*
Perkins.

2. That the verdict, in the excessive amount of damages, if not in all respects, is manifestly against the weight of evidence. In the first place, so far as the extra work claimed in the bill of particulars is concerned, the evidence will not justify a verdict of one dollar for the plaintiffs. The plan exhibited on the trial, without objection, and referred to in the bill, was, according to the uncontradicted testimony of *Russell Warren*, a part of the contract, and has never been altered since its execution by the parties. Secondly, the following work embraced in the bill, as extra work, is required of the plaintiffs, by the plan: Octagon bay windows, charged at $60. Chimneys, charged at $150. Enlarging size of house upon ground plan, over and above specifications of contract, charged at $225. Altering and making green-house, charged at $200. All the above work was done, by the plaintiffs, without any request from the defendant; and was as much a matter of course as any work on the building. Thirdly, there are two other charges; one for raising and constructing building $2\frac{1}{2}$ feet in height, over and above the specifications of the contract, charged at $350; and one for raising roof from 16 to 20 feet above specifications of the plan, charged at $100. As to these claims, there was no proof whatever, that the defendant, or the architect employed by him to superintend the work, ever had any knowledge that the plaintiffs were constructing the building different, in these respects, from the contract; much less, that they requested it. Fourthly, all the above work was performed, before the plaintiffs gave the receipt dated *January* 15th, 1846. In the absence of any proof that such receipt was not given understandingly, it is a bar to all these claims. Fifthly, as to the small charges in the bill, they are either required by the contract, or counterbalanced, by work omitted. The work omitted is appraised, by three witnesses, at something over $75.

3. That a general view of the case will show that the verdict must be erroneous.

| | | | | | |
|---|---|---|---|---|---|
| The contract price is, | . | . | . | $2800. |
| Payments admitted, | . | . | . | 1981.84 |
| Balance, | . | . | . | . | 818.16 |

The evidence introduced by the defendant shows, that he

New-London, expended $853.72, in doing work required of the plaintiffs,
July, 1848. by their contract.    Allow to the jury the widest discretion,
Bishop      on the whole evidence, and they could not be justified in find-
v.          ing a verdict against the defendant of one dollar.
Perkins.

*Foster* and *Lippitt*, contra, contended, 1. That a new trial
for a verdict against evidence, will be granted only in clear
cases, where the verdict is *palpably* against the evidence
in the cause. *Bartholomew* v. *Clark*, 1 *Conn. R.* 472. *Bacon*
v. *Parker*, 12 *Conn. R.* 212.    *Talcott* v. *Wilcox*, 9 *Conn.
R.* 134.    *Palmer* v. *Hyde*, 4 *Conn. R.* 426.    *Crouch* v.
*Carrier*, 16 *Conn. R.* 505.    *Bulkley v. Waterman*, 13 *Conn.
R.* 328.    *Jackson* v. *Packer*, *Id.* 343.    Such is not this case,
but quite the reverse.    In the first place, the work and mate-
rials contracted for, were unquestionably done and furnished.
Secondly, it is equally indisputable, that there was *extra*
work done.    Thirdly, there was money due the plaintiffs, in
any view of the evidence.    Fourthly, the defendant was
*liable* for the extra work.    He was present and directed as
to the whole ; and the work, under his direction, varied both
from the contract and the plan.

2. That the damages allowed were not excessive.    In the
first place, the work was well done, and accepted.    Secondly,
the bills of the defendant ought not to be allowed.    They
were not embraced in the contract, and were made *without
authority*.    But if otherwise, they were *exorbitant*.

3. That the receipt should be construed with reference to
the subject matter, and the intent of the parties.    *Fuller* v.
*Crittenden*, 9 *Conn. R.* 401.

4. That the plaintiffs are not precluded, by their bill of
particulars, from claiming to recover the value of the work
and materials, if the proof shows that the contract was aban-
boned.    3 *Stark. Ev.* 1055.    *Brown* v. *Hodgson*, 4 *Taunt.*
189. 5 *Dowl. P. C.* 438.    *Kilner* v. *Bailey*, 5 *Mees. & W.*
382. 2 *Phil. Ev.* 473. n.    *Chitt. Cont.* 451.    3 *Har. Dig.*
5499. 5604.

5. That the charge was, in all respects, sufficiently favour-
able to the defendant ; but if otherwise, entire justice has
been done in the cause, and a new trial ought not to be
granted.    *Johnson* v. *Blackman*, 11 *Conn. R.* 342. 358.

New-London,
July, 1848.

Bishop
v.
Perkins.

HINMAN, J.   It is claimed, that the court erred in admitting evidence to prove the value of the whole work and materials done and furnished, by the plaintiffs, in the erection of the defendant's house.   The action was for materials furnished, and labour performed, in building a house ; and though claimed by the defendant to have been done under a special contract, yet, as this was denied, and was throughout a matter in dispute between the parties, it is clear that if the plaintiffs' claim was correct, the only rule of damages must be, the value of the labour and materials furnished.

But it is said, that the bill of particulars recognises the contract as still subsisting ; and therefore, the plaintiffs ought to be confined to it, in their proof.   In the second and third counts, the plaintiffs have set out their claim as specifically as the nature of it would admit.   In regard to those counts, no bill of particulars was necessary.   The counts themselves gave the defendant all the information that he could ask for. The bill of particulars, therefore, only applied to the first count, and ought not to limit the plaintiffs' proof, under their special counts.   To give such effect to the bill of particulars, would entrap the plaintiffs.   If, then, there was no special contract, to furnish the rule of damages, the plaintiffs, it would seem, ought to recover the value of the labour and materials furnished ; and, as we think, they could do so, under the second and third counts, without a bill of particulars, the evidence to prove such value was properly admitted.

It is next claimed, that the verdict is against the evidence in the cause, and that the damages are excessive.   This depends upon whether there was proof, which authorized the jury to find, either that the special contract, shown in the deposition of Mr. *Warren,* had been abandoned ; or, that the plaintiffs had performed the extra work, charged by them. Mr. *Warren's* deposition is very strong in favour of the defendant's claim ; and, if there was no countervailing evidence, it would seem to be conclusive.   But it is to be remarked, that the question is not now, whether from a detail on paper of all the evidence in the cause, we should have found as the jury have ; but it is, whether there was such evidence, as will justify them in finding as they have done.   It is said, indeed, there was an enlargement of the house contracted for, of about ten *per cent.* only, whereas the verdict is more than fifty

*per cent.* greater than the contract price.   We do not see much force in this argument here.   It was, no doubt, proper for the consideration of the jury, on the trial below; but is too uncertain in its character to lay the foundation for a new trial.

To show that the special contract had been abandoned by the parties, there was, in the first place, the fact just alluded to, that the house, as it was finally erected, was very different from the house described in the contract.   We have not thought it important to test the accuracy of the defendant's estimate of the extent of the alterations.   It is sufficient that many of them appear from the testimony of Mr. *Warren* himself.   They consist in an enlargement of the house, in its length, breadth and height, of some feet; in a change in the form of the roof, by which that part was much enlarged; in changing many of the materials of which different parts were to be constructed; in altering the form of the bay-window; and in altering the internal arrangement : in short, the house as erected, was changed in size, in form, in arrangement, and, in many particulars, in the quality of the materials of which it was constructed.   We are aware, that these various alterations were claimed to have been done, by consent of all parties; and that it was insisted, that they were not to vary the compensation.   But this was the very question in dispute. The plaintiffs' claim was, that they were all directed to be made, by the defendant, and were to be paid for as extra work, unless, indeed, the changes were so great as to justify them in charging for their labour and materials, in erecting the whole house, as a different structure from the one first contracted for, on the ground of an abandonment, by the parties, of that contract.

And we think, there was evidence tending to prove such abandonment.   A dispute arose as to the terms of the contract, at the commencement.   The person employed to stone the cellar, testifies, that he was obliged to stop work until they could agree; Mr. *Perkins* claiming, that the work was not according to the contract, and the plaintiffs insisting, that it was.   The work was altered, according to Mr. *Perkins'* wishes; and the plaintiffs told him, that they should charge him for it as extra work; he, at the time, saying, that he should give them no directions.   From this commencement,

during the whole period that the house was in building, the
defendant was almost constantly present, superintending the
construction. He appears, indeed, to have taken the sole
charge of it. Sometimes, we are aware, in speaking of the
work, he compared it with the contract, as he claimed it to
be. But he directed the workmen to throw away materials
that he thought unsuitable, and said that he would be respon-
sible for it. He directed as to the size of the frame, when it
was found that the plans differed from the dimensions given
in the contract; and caused it to be enlarged and to agree
with the plan, rather than the contract; and said, that if there
was any thing extra, he would pay for it. He procured ma-
terials, in place of such as he thought insufficient. He pulled
down the foundation of the bay-window, because it did not
suit him; and, from day to day, he directed in regard to the
quality of the work and materials; and in some instances, as
to the time when the work should be done, with the same
particularity as is usual with those who employ labourers by
the day. Now, taking into consideration the material dis-
crepancies and contradictions between the contract and the
plan, claimed by the defendant to be a part of it, the fact,
that the house erected did not agree with either of them; the
fact, that the defendant superintended and directed, as to all
the alterations; and that the plaintiffs, in all instances, fol-
lowed his directions; and when we find, that the house, as
erected, is confessedly worth 4500 dollars, when the contract
price was only 2800 dollars; we think there was evidence
from which the jury would have the right to infer, either an
abandonment of the original contract, or that there was a
large amount of labour and materials furnished, that ought to
be paid for as extra.

It is said, however, that the bill of particulars recognizes
the special contract as still existing; and that the receipt of
the 15th of *January*, 1846, is conclusive proof of this fact,
and that no extra work was to be paid for, by the defendant.
We do not think there is much force in the claim, as to the
bill of particulars. To a certain extent, perhaps, that paper
may be said to recognize the existence of the special contract.
It claims payment for a house erected pursuant to such a con-
tract, with the various alterations, also stated, and for which
payment is claimed, as for extra work. This is, as we have

seen, but an amplification of the first count.    It does not seem, therefore, to be entitled to much weight.    Besides, an examination of the evidence shows, that, whether the plaintiffs are allowed a reasonable compensation for their labour and materials, under the idea that the special contract was abandoned; or, whether they are allowed the contract price, with a reasonable compensation for the extra work and materials, the result is the same.    In neither case, is the verdict excessive.    It is therefore immaterial, whether the contract was in fact abandoned, or not.

The receipt, undoubtedly, is much stronger evidence, that the plaintiffs then recognized the existence of the special contract, and that the house was erected under it; and also, that they had no claim for extra work.    If the receipt was understandingly executed, and they were fully apprised of its import, it would be difficult to arrive at any other conclusion.

The plaintiffs, however, claimed, that it was only intended by them as an acknowledgment of the amount of money which they then received; and was not intended as an admission or acknowledgment of any thing in regard to the contract under which it was received.    The jury must have found this claim to be true; and if it is true, in fact—if the receipt was executed without a full knowledge of its contents—the plaintiffs ought not to be concluded by it.    It has been held, that a receipt given for a specific purpose, cannot be used for a different purpose, in violation of the object for which it was given.    *Tucker* v. *Baldwin*, 13 *Conn. R.* 136. This is decisive, as to any question of law being raised, in regard to the receipt.    But no complaint is made of the manner in which the question was submitted to the jury; and although we might not view the fact in the same light the jury must have done, yet we do not feel authorized to say, that the verdict is so clearly against the weight of evidence, as to justify us in granting a new trial on this ground. The receipt was drawn up by the defendant; it was in his hand-writing; and it did not appear that any person was present at its execution.    The jury undoubtedly thought, that it was signed, without any attention being given to its contents, and without reading; the plaintiffs supposing, that it was a mere receipt for the draft and money then paid them. We cannot say, that the circumstances, as they appeared at

the trial, did not justify this conclusion ; and we do not, there-fore, advise a new trial, on any of the grounds on which it is asked.

In this opinion the other Judges concurred.

New trial not to be granted.